IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS
AT KANSAS CITY

| | |
|---|---|
| G4 INNOVATIONS LLC, on behalf of itself and others similarly situated, | ) ) ) |
| Plaintiff, | ) Case No. ) ) **JURY TRIAL DEMANDED** |
| v. | ) ) |
| PACCAR, INC.<br>    Serve: The Prentice-Hall Corporation<br>           System, Inc.<br>           251 Little Falls Drive<br>           Wilmington, DE 19808 | ) ) ) ) ) ) ) |
| Defendant. | ) |

## CLASS ACTION COMPLAINT

For its class action complaint against Defendant PACCAR, Inc. ("PACCAR"), Plaintiff G4 Innovations LLC ("Plaintiff"), individually and on behalf of all others similarly situated, alleges the following based upon personal knowledge as to Plaintiff and Plaintiff's own acts, and upon information and belief as to all other matters based on the investigation conducted by Plaintiff's attorneys. Plaintiff believes that substantial evidentiary support will exist for the allegations set forth herein after a reasonable opportunity for discovery.

## INTRODUCTION

1. This is a class action lawsuit involving defectively designed engines.

2. These defectively designed engines are known as the EPA2021 MX-13 and MX-11 diesel engines (the "Engines").

3. The Engines are manufactured by PACCAR Engine Company ("PEC") and installed in tractor-trailer and vocational trucks manufactured by PACCAR and sold through

1

PACCAR subsidiaries Kenworth Truck Company ("Kenworth"), Peterbilt Motors Company ("Peterbilt") and DAF Trucks N.V. ("DAF") under the "Kenworth," "Peterbilt" and "DAF" nameplates.

4. The Engines are defective because they incorporate a fuel injector that is prone to fail, causing the engine to become inoperable (the "Fuel Injector Defect").

5. PACCAR began installing the Engines in tractor-trailer and vocational trucks beginning in model year 2021.

6. PACCAR continues installing the Engines in tractor-trailer and vocational trucks and selling those trucks to class members even though it is and has been aware of the Fuel Injector Defect.

7. PACCAR continues installing the Engines in tractor-trailer and vocational trucks and selling those trucks to class members even though it is and has been aware there is no way to permanently remedy the Fuel Injector Defect.

8. PACCAR continues installing the Engines in tractor-trailer and vocational trucks and selling those trucks to class members even though it is and has been aware that the basic warranty offered with these trucks—a warranty upon which class members reasonably rely in deciding to purchase the trucks—fails of its essential purpose because there is no way to permanently remedy the Fuel Injector Defect.

9. Any attempt by PACCAR to limit or exclude incidental or consequential damages pursuant to the basic warranty is unconscionable because said warranty was unilaterally drafted by PACCAR without negotiation or opportunity for input from Plaintiff or class members, PACCAR continues installing the Engine in trucks and selling those trucks to class members even though it is and has been aware of the Fuel Injector Defect, and PACCAR is not able to repair the Engine to rectify the Fuel Injector Defect.

2

10. Plaintiff brings this action for breach of express warranty on behalf of itself and the class as defined herein and seeks all damages available under relevant provisions of the Uniform Commercial Code as adopted by the State of Kansas and each state in which class members purchased trucks equipped with the Engines.

## THE PARTIES

11. Plaintiff G4 Innovations LLC is a limited liability company organized and existing under the laws of the State of Kansas with a principal place of business at 12351 South Crest Drive, Olathe, Kansas 66061.

12. Defendant PACCAR is a corporation organized and existing under the laws of the State of Delaware with a principal place of business at 777 106th Avenue N.E., Bellevue, Washington 98004. PACCAR manufacturers tractor-trailer and vocational trucks and sells them in the United States through its subsidiaries Kenworth and Peterbilt under the "Kenworth" and "Peterbilt" nameplates.

## JURISICTION AND VENUE

13. This Court has jurisdiction over this action under the Class Action Fairness Act ("CAFA"), 28 U.S.C. § 1332(d). There are at least 100 members in the proposed class, the aggregated claims of the individual class members exceed the sum or value of $5,000,000.00 exclusive of interest and costs, and members of the proposed class are citizens of states different from Defendants.

14. This Court may exercise jurisdiction over PACCAR because PACCAR purposefully and intentionally placed vehicles with the defectively designed engines into the stream of commerce within Kansas and throughout the United States. Accordingly, PACCAR has conducted substantial business in this District.

15. Venue in this Court is proper in this District pursuant to 28 U.S.C. § 1391 because Plaintiff is located in this District and PACCAR transacts business in this District and is subject to personal jurisdiction in this District. Additionally, PACCAR has advertised in this District, has authorized repairs in this District, and has received revenue and profits from the sale and/or leasing of vehicles in this District. A substantial part of the events and/or omissions giving rise to the claims occurred within this District.

## FACTUAL ALLEGATIONS

*PACCAR and the EPA2021 MX-13 and MX-11 Engines*

16. PACCAR is a global technology company that designs and manufactures light-, medium- and heavy-duty commercial vehicles sold worldwide under the "Kenworth," "Peterbilt" and "DAF" nameplates.

17. PACCAR focuses on the premium segment of the trucking industry, and promotes its products as delivering "operational excellence and luxury" for its customers.

18. PACCAR vehicles can be equipped with diesel engines and other powertrain components designed and manufactured by PACCAR subsidiary, PEC.

19. PEC designs and manufactures engines and components both for PACCAR vehicles and for vehicles manufactured by various third parties.

20. In 2021, PACCAR and PEC introduced the newly designed EPA2021 MX-13 and MX-11 diesel engines, which were and continue to be offered as optional power plants in certain PACCAR trucks carrying the "Kenworth" and "Peterbilt" nameplates.

21. Trucks equipped with the EPA2021 MX13 and MX-11 engines have sold exceptionally well.

22. PACCAR enjoyed a record year in 2022. It delivered 185,900 trucks, and generated record revenues of $28.82 billion and record net income of $3.01 billion.

*The Express Warranty*

23. Customers buying or leasing these trucks receive a basic engine warranty from PACCAR. A true and correct copy of the basic engine warranty is attached hereto as <u>Exhibit A</u>.

24. The basic engine warranty is part of the purchase price of each vehicle. Customers are not required to pay anything extra to receive the basic warranty nor are they given the option to refuse the basic warranty.

25. Customers rely on the existence of the basic warranty in purchasing vehicles equipped with the Engines.

26. The terms of the basic warranty are not negotiated between customers and PACCAR. Rather, the basic warranty is given to customers at or about the time the vehicle is delivered.

27. The basic warranty provides in pertinent part that the Engines "will be free from defects in materials and factory workmanship ('Warrantable Failures') appearing under normal commercial use and service during the time or mileage or hour limitations set forth in the attached Warranty Schedule." These limitations are 24 months, 250,000 miles or 6,250 hours.

28. The basic warranty purports to limit PACCAR's obligation to the "repair or replacement of 'Warrantable Failures' at authorized United States and Canadian PACCAR engine dealers, or an authorized PACCAR Engine Facility where applicable."

29. The basic warranty purports to exclude PACCAR's liability for incidental and consequential damages.

*Warrantable Failure – The Defective Fuel Injector*

30. Almost immediately after the Engines were introduced, trucks equipped with the Engines began experiencing mechanical failures due to a problem with the Engines' fuel injectors.

31. A fuel injector is a device used to meter and inject fuel into gasoline and diesel internal combustion engines.

32. When the fuel injector is open, liquid fuel passes through the injector under high pressure and becomes atomized as it exits through the injector's spray tip.

33. The atomized fuel mixes with air and enters the combustion chamber where the mixture is ignited.

34. Benefits of fuel injection systems can include improved fuel economy, reduced emissions and increased power.

35. The following is a basic illustrator of a fuel injector and its component parts:



36. The injectors used in the Engines are defective in that the atomization holes in the injector's internal spray tip (or orifice disc) are engineered in a manner that renders them prone to partial or complete clogging after a short period of ordinary use. This condition can lead to

multiple problems, including, but not limited to, severe loss of engine power, shaking or vibration of the vehicle, engine knocking or detonation, lean fuel mixtures, rpm fluctuations and ultimately Engine failure.

37. These problems threaten the safety of both the driver and the general public, as the Engines are typically installed in large trucks used to transport extremely heavy loads nationwide. When the capacity of these trucks to operate and perform as intended is compromised, they become an inherent danger to anyone in or near them.

38. The clogging problem associated with these injectors tends to be worse in cold weather, when diesel fuel is blended with additives to prevent the formation of wax crystals which cause the fuel to thicken and turn to a gel.

39. PACCAR is familiar with these problems and has issued service bulletins recommending the use of diesel fuel additives and cleaning or replacing the faulty injectors; however, PACCAR also recognizes these are temporary remedies. Bulletin E290 reads in part, "The diagnostic codes and injector problems may be caused by carboxylate clogging of injector internal ports. This cleaning procedure should clean the deposits, but it is not a permanent fix."

*Plaintiff's Experience*

40. Plaintiff purchased four new Kenworth trucks in 2021. These were T680 trucks, produced for model year 2022, and equipped with MX-13 diesel engines.

41. Plaintiff purchased the trucks from MHC Kenworth in Olathe, Kansas. MHC owns and operates numerous truck dealerships and service centers nationwide.

42. Plaintiff took possession of two of the trucks in August 2021 and the other two in September 2021.

43. Plaintiff received a PACCAR basic engine warranty with each of these trucks.

44.     Plaintiff first began experiencing fuel injector problems with one of these trucks in March 2022.

45.     In response to these problems, and pursuant to the terms of PACCAR's basic engine warranty, Plaintiff returned the truck to MHC Kenworth in Olathe, Kansas for repair.

46.     MHC Kenworth repaired or purported to repair the truck, and Plaintiff assumed the problems had been resolved.

47.     In early 2023, Plaintiff began experiencing the same fuel injector problems with each of his other trucks.

48.     In response to these problems, and pursuant to the terms of PACCAR's basic engine warranty, Plaintiff returned the trucks to MHC Kenworth for repair.

49.     After repeated failed attempts to permanently fix the injector problems, MHC staff explained to Plaintiff the design of the injectors was defective in that the atomization holes in the injector's spray tips were too small and/or too few in number to allow the diesel fuel to flow through the injector properly.  In addition, Plaintiff was told the injectors were designed for the European market, where diesel fuel is manufactured to different standards.  Diesel fuel sold in the United States, he was told, is more likely to contain impurities that are incompatible with the newly designed injectors used in the Engines.  Although a subsequent injector design change is reportedly underway, no permanent solution currently is known to exist.

50.     Plaintiff's trucks have experienced significant downtime as a result of the issues alleged herein, and these issues have caused Plaintiff to suffer hundreds of thousands of dollars in damages.  While PACCAR and Kenworth have processed warranty claims regarding these failures, they have yet to offer any permanent solution.

51. The problem with these fuel injectors is well-known within the trucking industry, which has negatively impacted the value of these trucks and made them far more difficult to trade or sell than trucks equipped with different engines.

## CLASS ACTION ALLEGATIONS

52. Plaintiff brings this action pursuant to Rules 23(b)(2) & (3) of the Federal Rules of Civil Procedure.

53. Plaintiff brings this action on behalf of all persons and entities who purchased or leased a new vehicle equipped with a PACCAR EPA2021 MX-13 or MX-11 diesel engine and made a claim for repairs pursuant to the basic engine warranty accompanying the vehicle for problems related to the vehicle's fuel injectors (the "Class"). Excluded from the Class is Defendant herein, any other officers or directors of Defendant, members of their immediate families and their legal representatives, heirs, successors or assigns and any entity in which Defendant has or had a controlling interest.

54. The members of the Class are so numerous that joinder of all members is impracticable. Although the precise size of the Class remains unknown as of the date of this filings, PACCAR's annual report shows that it sold close to 200,000 trucks in 2022 alone. If even ten percent of those trucks were equipped with the Engines, the numerosity requirement would be easily satisfied.

55. Plaintiff's claims are typical of the claims of the members of the Class as all members of the Class purchased or leased a new vehicle equipped with a PACCAR EPA2021 MX-13 or MX-11 diesel engine and made a claim for repairs pursuant to the basic engine warranty accompanying the vehicle for problems related to the vehicle's fuel injectors.

56. Plaintiff will fairly and adequately protect the interests of the members of the Class and has retained counsel competent and experienced in class and complex litigation and class actions.

57. Plaintiff has no interests antagonistic to or in conflict with those of the Class.

58. Common questions of law and fact exist as to all members of the Class and predominate over any questions solely affecting individual members of the Class. Among the questions of law and fact common to the Class are:

    A.    The cause or causes of the fuel injector problems in the Engines;

    B.    The potential remedies, if any, for the fuel injector problems in the Engines;

    C.    Whether PACCAR's basic engine warranty fails of its essential purpose; and

    D.    Whether the terms of PACCAR's basic engine warranty are unconscionable.

59. A class action is superior to all other available methods for the fair and efficient adjudication of this controversy since joinder of all members is impracticable. Furthermore, the damages suffered by individual Class members, while significant, may pale in comparison to the cost and complexity of this action. The expense and burden of individual litigation may make it impossible for members of the Class to individually redress the wrongs done to them. There will be no difficulty in the management of this action as a class action.

## CAUSE OF ACTION – BREACH OF EXPRESS WARRANTY

60. Plaintiff repeats and realleges each and every allegation set forth above as if fully set forth herein.

61. Under PACCAR's basic engine warranty, PACCAR warrants that the Engines "will be free from defects in materials and factory workmanship ('Warrantable Failures') appearing under normal commercial use and service during the time or mileage or hour limitations set forth in the attached Warranty Schedule."

62. Under PACCAR's basic engine warranty, PACCAR is required to "repair or replacement of 'Warrantable Failures' at authorized United States and Canadian PACCAR engine dealers, or an authorized PACCAR Engine Facility where applicable."

63. On information and belief, at the time Class members purchased vehicles equipped with the Engines, PACCAR knew that it could not honor the terms of its basic engine warranty because the Engines employed fuel injectors that were defective for the reasons described herein. There was and remains no way to "repair or replace" the fuel injectors so that they function properly. Absent a complete redesign, the fuel injectors could not be made "free from defects" as PACCAR promised.

64. Class members afforded PACCAR multiple opportunities to honor the terms of its basic engine warranty. They brought their vehicles to authorized dealers for repair. But the vehicles could not be repaired because the Engines employed defective fuel injectors. And there was and remains no way to replace the fuel injectors because a non-defective design did not and does not exist.

65. Because the "Warranty Failures" in the Engines cannot be repaired or replaced so as to render them free from defects, the Class is left without a remedy and the basic engine warranty fails of its essential purpose.

66. Moreover, the terms of the basic engine warranty, including the terms excluding PACCAR's liability for incidental and consequential damages, are unconscionable. The basic warranty is a form contract that the class members could not negotiate or refuse when buying or leasing their truck. The defect in these Engines can cause the Engines to become inoperable at any time. Because the Engines are often installed in vehicles used for over-the-road trucking, this can result in the operators of these vehicles being stranded in the middle of nowhere, far away from any service center or other facility that might install a temporary fix to make the Engines

operable again. The defects in these Engines have caused class members to experience significant downtime caused by fuel injector failures, for which there is not currently a permanent solution. The exclusion of incidental and consequential damages in the basic warranty is procedurally and substantively unconscionable, and therefore unenforceable.

67. Plaintiff and the Class have been robbed of the benefit of their bargain: a reliable and operational Engine free of material defects.

68. The repair and replacement services offered by PACCAR did not fix the problem with the Engine. As a result of PACCAR's failure to properly or adequately repair or replace Plaintiff's Engine and the Engines in vehicles owned or leased by other Class members, Plaintiff and the Class have suffered actual, incidental, and consequential damages.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiff demands judgment against Defendant as follows:

A. Determining that the instant action may be maintained as a class action under Rule 23 of the Federal Rules of Civil Procedure, and certifying Plaintiff as the Class representative and appointing undersigned counsel as counsel for the Class;

B. Requiring Defendants to pay damages sustained by Plaintiff and the Class by reason of the acts and transactions alleged herein;

C. Awarding Plaintiff and the other members of the Class prejudgment and post-judgment interest, as well as their reasonable attorneys' fees, expert fees and other costs; and

D. Awarding such other and further relief as this Court may deem just and proper.

## **DESIGNATION OF PLACE OF TRIAL**

Plaintiff hereby designates the District of Kansas at Kansas City as the requested place of trial.

Respectfully submitted,

**BARTLE & MARCUS, LLC**

By: /s/ David L. Marcus
David L. Marcus, KS #18034
Benjamin B. Donovan, KS #28760
4700 Belleview Avenue
Suite 200
Kansas City, Missouri 64112
dmarcus@bmlawkc.com
bdonovan@bmlawkc.com
Tel: (816) 285-3888
Fax: (816) 222-0534

*Attorneys for Plaintiff*